

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| BOBBY L. JOHNSON, | \* | CIV 06-1023 |
| Plaintiff, | \* | |
| -vs- | \* | OPINION AND ORDER ON MOTION TO DISMISS |
| UNITED STATES OF AMERICA, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Introduction

Bobby Johnson ("Johnson") brought this action against the United States of America, alleging that Bureau of Indian Affairs ("BIA") correctional officer Shobe Little Light ("Little Light") and Standing Rock Sioux Tribe police officer Gary Sandland ("Sandland") committed the following torts while arresting Johnson in September 2003: (1) false and unlawful arrest; (2) arrest without authority and beyond the job descriptions of the arresting officers; (3) negligent use of force in taking Johnson into custody; (4) assault and battery; (5) false imprisonment; (6) failure to secure timely medical care; (7) deliberate indifference to Johnson's medical needs; (8) cruel and unusual punishment; and (9) deprivation of due process and equal protection of the law. This court's jurisdiction is alleged to exist pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), 2671 *et seq*. The defendant has moved to dismiss this action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### Factual Background

In September 2003, Little Light, a Montana resident with a duty station in Montana, was temporarily stationed as a detention officer, i.e. jailor, at the BIA detention facility in Fort Yates, North Dakota. The BIA provided Little Light with temporary lodging in Mobridge, SD, and with a government vehicle equipped with a police radio. While driving to Mobridge after his shift at the detention facility had ended, and while still wearing his correctional officer uniform, Little

Light saw Johnson operating his vehicle in a dangerous manner, swerving from side of the road to the other. Johnson managed to bring his vehicle to a stop and Little Light also stopped to see if Johnson needed help. After speaking with Johnson, and believing him to be intoxicated and a menace on the highway, Little Light attempted to detain Johnson. Johnson alleges that Little Light identified himself as a police officer and that Little Light beat Johnson while trying to arrest him. Johnson also alleges that Sandland was present and witnessed the beating, but did not attempt to intervene on Johnson's behalf. Little Light claims that Johnson was injured after he fell while trying to flee for the second time. Johnson was then taken by ambulance to the hospital, where he was admitted with a minor clavicle fracture, closed head injury, multiple abrasions and cuts about his eyes, head, neck, and trunk. His blood alcohol content was .264. He stayed at the hospital as an inpatient for approximately six weeks and subsequently required speech therapy.

## Discussion

### I.   FTCA Jurisdiction

"The term sovereign immunity refers to a general rule that the government cannot be sued unless it allows itself to be sued." Claude v. Smola, 263 F.3d 858, 859 (8th Cir. 2001). "Sovereign immunity is jurisdictional in nature." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The FTCA provides a waiver of the United States' sovereign immunity "'under circumstances' where local law would make a 'private person' liable in tort." United States v. Olson, 546 U.S. 43, 44, 126 S.Ct. 510, 511, 163 L.Ed.2d 306 (2005) (emphasis omitted) (*quoting* 28 U.S.C. § 1646(b)(1)). The waiver is subject to exceptions, including an "intentional torts" exception, which provides that "the provisions of . . . section 1346(b) of this title shall not apply to . . . [a]ny claim arising out of assault, battery, false imprisonment, [or] false arrest." 28 U.S.C. § 2680(h). This exception is itself followed by the exception "that with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of . . . section 1346(b) of this title shall apply to any claim arising . . . out of assault, battery, false imprisonment, [or] false arrest." *Id*. In this context, an investigative or law enforcement officer is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." *Id*.

2

**II.     12(b)(1) Standard of Review**

> The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993) . . . [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Locke v. United States, 2002 DSD 22, ¶¶ 6-7, 215 F.Supp. 2d 1033, 1037 (Kornmann, District Judge) aff'd, 63 F.App'x 971 (8th Cir. 2003) (unpublished opinion).

The United States presents three factual challenges to this court's jurisdiction, specifically that at the time of the alleged torts (1) Sandland was not a federal employee; (2) Little Light was not an investigative or law enforcement officer under the FTCA's intentional torts exception; and (3) Little Light was acting outside of the scope of his federal employment.

**a.     Sandland**

The United States alleges that Sandland was not an employee of the United States government but simply a tribal police officer employed by the Standing Rock Sioux Tribe.

> "It is undisputed that Indian tribes have power to enforce their criminal laws against tribe members." *United States v. Wheeler*, 435 U.S. 313, 322, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978) . . . The Supreme Court has squarely rejected the argument that this power derives from a delegation by the federal government, holding instead that the power is inherent in tribal sovereignty.

Dry v. United States, 235 F.3d 1249, 1253 (10th Cir. 2000). However, tribal law enforcement officers are considered employees of the BIA for FTCA purposes when tribal law enforcement functions are funded and performed pursuant to an Indian Self Determination Act ("ISDA") contract. A tribal police officer who has received a Special Law Enforcement Officer ("SLEO") commission can provide "active assistance in enforcing applicable Federal criminal statutes, including Federal hunting and fishing regulations, in Indian country." 25 U.S.C. 450(f), Locke at 1037-8, and 25 CFR.§ 12.21.

The United States provided the declaration of Elmer Four Dance ("Four Dance"), Special Agent In-Charge for District I (including North and South Dakota), BIA Office of Law Enforcement Services, stating that prior to becoming a BIA police officer in October 2004, Sandland was employed as a tribal police officer by the Standing Rock Sioux Tribe and that Sandland did not have a SLEO commission while he was employed as a tribal officer. Four Dance's declaration also states that the Standing Rock Sioux Tribe did not have an ISDA contract with the BIA for the provision of law enforcement services at the time of the incident involving Johnson. Mr. Johnson has presented no evidence to support his contention that Sandland was an employee of the United States, or to controvert the defendant's evidence that Sandland was anything other than a tribal police officer at the time of the incident. Since Johnson has failed to meet his burden on this issue, as a matter of law, the defendant is not liable for Sandland's alleged torts in this action.

**b.     Little Light**

The United States concedes that Little Light is an employee of the federal government and that, under certain circumstances, the United States may be liable for his torts under the FTCA. However, the United States contends that Little Light is not an investigative or law enforcement officer under the FTCA intentional torts exception, 28 U.S.C. § 2680(h), and that this court does not have jurisdiction over Johnson's claims for the intentional torts of false and unlawful arrest, arrest without authority and outside the scope of employment, assault and battery, and false imprisonment.

In Vallo v. United States, 298 F. Supp. 2d 1231, 1233 n.2 (D.N.M. 2003), "the BIA funded and operated" a tribal detention facility where an inmate alleged that she was sexually assaulted by a correctional officer. The correctional officer was considered a federal employee for FTCA purposes but was found to not be an investigative or law enforcement officer, even when the alleged torts occurred at the detention facility. Vallo, 298 F. Supp. 2d at 1233 n.2, 1237. Similarly, I have previously held that although tribal police officers are considered federal employees for FTCA purposes when tribal law enforcement functions are funded and performed pursuant to an ISDA contract, they are not federal investigative or law enforcement officers. Locke, 215 F. Supp. 2d at 1037.

The defendant presented the declaration of Guillermo Rivera, attesting that BIA correctional officers such as Little Light are not authorized to make arrests for violations of federal law, to execute searches, or to seize evidence, and that they are not considered qualified to receive SLEO commission cards. The defendant also presented the declaration of Little Light, stating that he had not been issued any SLEO commission. Plaintiff presented an "Adult Community Residential Handbook ("Handbook")," which apparently governs the operation of BIA detention facilities. Although the Handbook does indicate that correctional officers have some authority to search for and seize contraband in detention facilities, their limited role in investigating and enforcing federal law is analogous to that of local or tribal officers. "It is common knowledge that local police officers and county sheriffs or deputies assist tribal officers and federal officers as well on occasion and vice versa. Such assistance does not cause these other law enforcement officials to be federal law enforcement officers." Locke, 215 F. Supp. 2d at 1037. Since Little Light is not an investigative or law enforcement officer, the United States is not liable as a matter of law for his alleged intentional torts in this action.

"There is no general duty to secure timely medical care for another unless "the actor knows or has reason to know that by his conduct . . . he has caused such bodily harm to another as to make him helpless and in danger of further harm." Restatement 2d of Torts, §§ 314, 322 (1965). Although there is Eighth Circuit authority in Gross v. United States, 676 F.2d 295 (8th Cir. 1982), supporting the proposition that only the torts listed in § 2680(h) are subject to the intentional torts exception, I have held that I consider Gross abrogated by the Supreme Court's decisions in Block v. Neal, 460 U.S. 289 (1983), and United States v. Shearer, 473 U.S. 52 (1985). Locke, 215 F. Supp. 2d at 1039-40. I adopted the position of the Eleventh Circuit: ". . . a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." Locke, 215 F. Supp. 2d at 1040, quoting Metz v. United States, 788 F.2d 1528, 1534 (1986). *See also* Williamson v. U.S. Dept. of Agriculture, 815 F.2d 369, 377 (5th Cir. 1987), and Thomas-Lazear v. F.B.I., 851 F.2d 1202, 1207 (9th Cir. 1988). Since Little Light's alleged assault of Johnson is essential to the claim for failure to secure timely medical care, the claim "arises out" of assault and is subject to the provisions of § 2680(h). Little Light is not an investigative or law

5

enforcement officer. Therefore, this court does not have jurisdiction over claims arising out of his intentional torts and the plaintiff's claim for failure to secure timely care should be barred.

Under South Dakota law, "a conscious choice to inflict force and a negligent exercise of force are wholly different species of conduct." Horne v. Crozier, 565 NW2d 50, 54 (S.D. 1997), cert. denied, 535 U.S. 1025 (1998). This court would have jurisdiction over Johnson's claim for negligent exercise of force and for failure to secure timely care as far as the duty to secure care arose from the negligent exercise of force, only if the acts were within the scope of Little Light's federal employment.

The United States asserts that the arrest is outside the scope of Little Light's employment as a correctional officer. Strangely enough, the complaint of plaintiff also alleges, inter alia, that the arrest was made "without authority and beyond job description" of Little Light. In other words, the parties agree that the Little Light did not act within the scope of his employment. Scope of employment determinations are to be made according to state law in FTCA cases. Primeaux v. United States, 181 F.3d 876, 878 (8th Cir. 1999). In determining if an act is within the scope of employment under South Dakota law

> [a] principal is liable for tortious harm caused by an agent where a nexus sufficient to make the harm foreseeable exists between the agent's employment and the activity which actually caused the injury; foreseeable is used in the sense that the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.

Leafgreen v. American Family Mut. Ins. Co., 393 NW2d 275, 280-81 (S.D. 1986). The Restatement (Second) of Agency § 229(2), adopted by South Dakota in Deuchar v. Foland Ranch, Inc., 410 NW2d 177, 180 (S.D. 1987), provides a list of factors to be considered "in determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment." The factors most relevant to this case include "the time, place and purpose of the act" and "the extent to which the business of the master is apportioned between different servants." Restatement (Second) of Agency § 229(2)(b), (d).

In Primeaux, 181 F.3d at 877, a BIA police officer raped a woman while he "was using a government car for authorized travel." Although "it is sufficiently foreseeable to a government employer that on-duty police officers will occasionally misuse their authority to sexually assault

detainees," the court found that since the officer "was unarmed, out of uniform, and off duty, insofar as his law enforcement duties were concerned . . . [and] outside his jurisdiction," his acts were not sufficiently foreseeable to make his employer liable for them. Primeaux, 181 F.3d at 882. Likewise, Little Light was provided with and authorized to drive a government vehicle. There is nothing to indicate that the vehicle was equipped with a siren or the typical lights on a police vehicle. Little Light was off duty and many miles from his jurisdictional place of employment.

The Restatement factors of time, place, and purpose also serve to place Little Light's actions outside the scope of his federal employment. The defendant provided the declaration of Guillermo Rivera, Associate Director of Corrections for the Office of Law Enforcement Services, BIA, stating that "[t]he duties of BIA correctional officers concern supervising criminal offenders in detention/correctional facilities." The purpose of Little Light's act was arresting and detaining a suspected drunk and highly dangerous driver who was known by Little Light to be approaching an area where children often played. He acted much as any private citizen might do under all the circumstances. The BIA's law enforcement program is also apportioned between different servants, i.e. correctional officers inside correctional facilities and police officers outside of correctional facilities. Rivera's declaration stated that "[i]t is the BIA's policy not to authorize its correctional officers to make arrests" and that "[t]he BIA's law enforcement program is distinct from the BIA's corrections program." It was not sufficiently foreseeable to Little Light's employer that a correctional officer would misuse the authority given him to (supervise detainees) to negligently use force in arresting a civilian while the correctional officer is off duty and many miles away from the detention facility. Since Little Light's arrest of Johnson was outside the scope of his federal employment, the FTCA does not grant this court jurisdiction over the negligence claims of Johnson and they should be dismissed.

Johnson also contends that the government is liable for Little Light's actions since Johnson believed Little Light to be a police officer. However, "even if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, the government's FTCA liability remains limited to employee conduct within the scope of employment." Primeaux, 181 F.3d at 878. Scope of employment and apparent authority are "two distinct legal theories." Thus, Little Light allegedly identifying himself as a police officer,

wearing a police style uniform, and driving a government vehicle equipped with a police radio are simply not relevant facts in the scope of employment analysis.

### III. Constitutional Torts

The defendant also makes a facial challenge to subject matter jurisdiction, alleging that the FTCA does not grant this court jurisdiction over the plaintiff's "cruel and inhuman punishment" claims, which include a claim of deliberate indifference to the plaintiff's medical needs, and over the plaintiff's due process and equal protection claims. Under a facial challenge to subject matter jurisdiction, the "non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Osborne v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir.1982)). When considering a Rule 12(b)(6) motion, the court must "accept all factual allegations in the complaint as true and grant every reasonable inference in favor of the nonmovant." Brown v. Simmons, 478 F.3d 922, 923 (8th Cir. 2007). The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can not prove any set of facts in support of his claim that would entitle him to relief." Schaller Telephone Co. v. Golden Sky Systems, Inc., 298 F.3d 736, 739 (8th Cir. 2002).

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 391 (1971), recognized private causes of action arising under the Constitution (specifically the Fourth Amendment) and the availability of the remedy of monetary damages under those causes of action. Subsequently, the Court "recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment," Correctional Services Corp. v. Malesko, 534 U.S. 61, 67 (2001) (internal citations omitted).

> However,
>
> to be actionable under § 1346(b), a claim must allege, *inter alia*, that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." A constitutional tort claim . . . could not contain such an allegation. Indeed, we have consistently held that § 1346(b)'s reference to the "law of the place" means law of the State-the source of substantive liability under the FTCA. By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right . . . the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.

8

F.D.I.C. v. Meyer, 510 U.S. 471, 477-78, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994). Likewise, the plaintiff's claims for deliberate indifference to his medical needs, subjecting him to cruel and inhuman punishment, and depriving him of due process and equal protection of the law arise under federal law; specifically, the Fifth, Eighth, and Fourteenth Amendments. Accepting all of the plaintiff's allegations as true, and granting every reasonable inference in favor of the plaintiff, the plaintiff has no remedy against the United States under the "law of the place" (South Dakota) for these alleged constitutional violations. This court does not have jurisdiction over these constitutional tort claims and they should be dismissed.

## IV.     Motion to Amend

The plaintiff requests leave to amend his complaint to add claims against Sandland by adding Sandland as a party defendant. Motions to add a party are properly made under Fed. R. Civ. P. 21, not by amending the complaint. The motion should be denied.

### ORDER

IT IS ORDERED that defendant's motion to dismiss, Doc. 8, should be and is granted, without the taxation of costs.

Dated this 10th day of September, 2007.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Barbara J. _____
                        DEPUTY
(SEAL)